UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JEFFREY ALLEN ROWE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:21-cv-02327-JMS-MKK |
| | ) | |
| GEO GROUP, INC., | ) | |
| SCOTT FITCH, | ) | |
| WORTH, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND PROVIDING NOTICE OF INTENT TO GRANT SUMMARY JUDGMENT IN PLAINTIFF'S FAVOR**

Plaintiff Jeffrey Allen Rowe, who is incarcerated by the Indiana Department of Correction (IDOC), alleges that on December 20, 2019, he was ordered out of his cell and was not permitted to pack up his own belongings, witness his property inventory, or move his own property before his transfer from New Castle Correctional Facility to Indiana State Prison (ISP). As a result, "a lot" of his property came up missing. Dkt. 1 at ¶ 59. Based on these allegations, Mr. Rowe claims that defendants Assistant Warden Fitch and Sgt. Worth denied him the opportunity to pack his belongings in retaliation for filing lawsuits and grievances. In addition, Mr. Rowe alleges that the individual defendants and GEO Group negligently handled his property in violation of state law. Dkt. 7.

Defendants seek summary judgment arguing that Mr. Rowe failed to exhaust his available administrative remedies as required by the Prison Litigation Reform Act (PLRA). *See* 42 U.S.C. § 1997e(a). For the reasons explained below, however, the IDOC's grievance policy excepted Mr. Rowe's claim from the prison's administrative process and thus there were no required steps that

Mr. Rowe failed to take. Defendants motion for summary judgment, dkt [25] is **denied** and pursuant to Rule 56(f)(1), the Court gives Defendants notice of its intent to grant summary judgment in the plaintiff's favor on this issue.

## I.
## Standard of Review

Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Comm. Schs.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. *Grant v. Tr. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'

which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

## II.
## Prison Litigation Reform Act and Exhaustion of Administrative Remedies

On a motion for summary judgment, "[t]he applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc., v. Superior Sys., Inc.,* 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson,* 477 U.S. at 248). Here, the substantive law is the PLRA, which requires that a prisoner exhaust available administrative remedies before suing over prison conditions. 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002) (citation omitted).

"To exhaust administrative remedies, a prisoner must comply strictly with the prison's administrative rules by filing grievances and appeals as the rules dictate." *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020) (citing *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006)). A "prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'" *Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004) (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)).

"Because exhaustion is an affirmative defense," Defendants face the burden of establishing that "an administrative remedy was available and that [Mr. Rowe] failed to pursue it." *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015). "[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake,* 578 U.S. 632, 642 (2016) (internal quotation omitted). The availability qualification "has led to two paths that excuse a prisoner from the normal duty to exhaust. If a

3

remedy is 'officially on the books' but the remedy is incapable of use in practice, perhaps because the prison's grievance processes have not been maintained or are unduly difficult to navigate, then the duty to exhaust falls away. . . . Likewise, there is no duty to exhaust if a remedy for an issue is not 'officially on the books'—that is, provided for in the text of the written grievance policy—in the first place." *Miles v. Anton*, 42 F.4th 777, 780 (7th Cir. 2022) (citing *Ross,* 578 U.S. at 643–44, 136 S.Ct. 1850 (outlining three different kinds of practical unavailability)).

### III.
### Factual Background

**A. The Offender Grievance Process**

Mr. Rowe alleges that the Defendants' actions resulted in the loss of his property.

The IDOC has an Offender Grievance Process. Dkt. 37-1 (Policy and Administrative Procedure 00-02-301, effective date October 1, 2017) (hereinafter "grievance process").[1] Inmates housed at New Castle are informed about and provided access to the grievance process during orientation and can access the policy by reviewing their inmate handbooks and through a request to the law library. Dkt. 27-1 at ¶¶13-14. There is no dispute that Mr. Rowe was aware of the grievance process as he filed well over one hundred grievances, and many of his grievances were fully exhausted. *Id.* ¶ 12. To exhaust the grievance process, an inmate must complete three formal steps:

> 1. A formal attempt to solve a problem or concern following unsuccessful attempts at informal resolutions;
>
> 2. A written appeal to the Warden/designee; and,
>
> 3. A written appeal to the Department Grievance Manager.

Dkt. 37-1 at 3.

The grievance process explains how to complete the first step by filing a formal grievance:

---

[1] Defendants initially presented IDOC Policy 00-02-301 (effective September 1, 2020) in support of their motion. *See* dkt. 27-2.

> An offender wanting to submit a grievance on an issue that he/she has been unable to resolve informally as outlined in Section X shall submit a completed State Form 45471, "Offender Grievance," no later than ten (10) business days from the date of the incident giving rise to the complaint or concern to the Offender Grievance Specialist.

Dkt. 37-1 at 9. The Grievance Specialist shall review the grievance form within five business days of receiving it and shall either accept it and log it, or reject it. *Id.* at 10. The Grievance Specialist must either return an unacceptable form or provide a receipt for an accepted form. *Id.* at 9.

> If the Offender Grievance Specialist determines from a review of the grievance form that it does not meet the requirements of this policy . . . the Offender Grievance Specialist shall return the grievance form within one (1) business day to the offender with an explanation as to why the form was returned and how it may be corrected. State Form 45475, "Return of Grievance," shall be used for this purpose. It shall be the responsibility of the offender to make the necessary revisions to the grievance form and to return the revised form to the Offender Grievance Specialist within five (5) business days from the date that it is returned to the offender.

*Id.* at 10. If, however, the prisoner does not receive either a receipt or a rejected form from the Offender Grievance Specialist within five business days after submitting it, he must notify the Offender Grievance Specialist of that fact (retaining a copy of the notice) and the Offender Grievance Specialist shall investigate the matter and respond to the offender's notification within five business days. Dkt. 37-1 at 9.

Inmates may grieve "[a]ctions of individual staff, contractors, or volunteers," among other things. *Id.* Meanwhile, examples of non-grievable issues include: "Classification actions or decisions, which include … facility transfers"; and "Tort Claims seeking monetary compensation." *Id.* at 3-4.

Later, however, the grievance policy plausibly contradicts the statement that a grievance cannot be filed regarding a tort claim seeking monetary compensation. The policy states in relevant part that an inmate can pursue a grievance at the facility from which he was transferred "regarding transfer of property or funds" within twenty business days from the date of transfer or release. *Id.*

5

at 14. The policy provides that "[t]he offender shall work cooperatively with the receiving facility's Offender Grievance Specialist to forward all necessary documentation to the sending facility's Offender Grievance Specialist." *Id.*

### B. Mr. Rowe's Attempts to Exhaust Administrative Remedies

Mr. Rowe testified that he attempted to informally resolve his complaints with Sgt. Worth on the day of his transfer by verbally protesting that his property was missing, and that in response Sgt. Worth retrieved some but not all of Mr. Rowe's commissary food. Dkt. 32-1 at 5. On December 21, 2019, Mr. Rowe also submitted a "Request for Interview" to ISP's grievance specialist in an attempt to have him refer Mr. Rowe's written informal attempt to resolve his complaint. A copy of this Request for Interview was attached to the formal grievance that Mr. Rowe submitted to the ISP grievance specialist on December 28, 2019. *Id.*

```
INDIANA DEPARTMENT OF CORRECTION
REQUEST FOR INTERVIEW

TO: Grievance Specialist   OFFICE: Grievance Specialist   DATE: December 28, 2019
NAME: Jeffrey Allen Rowe   DOC#: 116017   DORM: PCU-D-2-8   ASSIGNMENT: Idle
Reason for Request: (be as definite as possible) Would you please forward the enclosed
"Offender Grievance" to New Castle Correctional Facility's Grievance
Specialist as soon as possible? I'd appreciate it. Thanks!

★★★DO NOT WRITE BELOW THIS LINE★★★

Action: _____

State Form 36935 (R/4-91)                   By: _____
```

6

Dkt. 32-4. Mr. Rowe's formal grievance specifically names Sgt. Worth and Assistant Warden Fitch claiming that "the way my personal property was handled, taken and/or lost is retaliation and theft to punish me for helping other prisoners sue staff at New Castle." Dkt. 32-4 at 3.[2]

Mr. Rowe did not receive a receipt or response to his Request for Interview or his formal grievance, so he submitted a notice to the ISP grievance specialist indicating that he did not receive a receipt or rejected grievance within five business days as required by policy. *Id.* at 6.

> **INDIANA DEPARTMENT OF CORRECTION**
> **REQUEST FOR INTERVIEW**
>
> TO: Grievance Specialist  OFFICE: Grievance Specialist  DATE: January 9, 2020
> NAME: Jeffrey A. Rowe  DOC#: 116017  DORM: PHU-D-2-8  ASSIGNMENT: Idle
> Reason for Request: (be as definite as possible) I submitted an "Offender Grievance" for you to forward to New Castle Correctional Facility on December 28, 2019, about staff at New Castle taking/losing my personal property when I was tricked out of my cell and got transferred here (on December 20, 2019). I have not received a receipt or rejected grievance back yet. Did you receive it, and if so, would you please have New Castle process it? Please respond.
> ★★★DO NOT WRITE BELOW THIS LINE★★★
> Action: _____
>
> State Form 36935 (R/4-91)                    By: _____

Dkt. 32-6.

On January 22, 2020, Mr. Rowe followed up again. He submitted a memo stating that he submitted an Offender Grievance a few weeks ago about New Castle staff retaliating against him

---

[2] Defendants challenge the admissibility of Mr. Rowe's requests for interview and formal grievance stating without any citation to authority that they are "not appropriate for Rule 56 motions" because they are unsigned, undated, and lack authenticity. But the Mr. Rowe's response brief signed under penalty or perjury reflects that he drafted these exhibits and the date on which he submitted them to prison officials. Defendants' unsupported challenge to the admissibility of these documents at summary judgment is overruled.

7

by losing his property. He states that he has not received a receipt or a rejected grievance and requests both a response and the processing of his grievance. Dkt. 41-1. The memo was stamped received on January 28, 2020, and J. Wallen, the ISP Grievance Specialist, responded writing, "Mr. Rowe, loss of property is a tort claim issue. Being moved is a classification appeal issue. Your grievance regarding NCCF staff was forwarded to NCCF. Thanks, J. Wallen." *Id.*

Shane Nelson, the current grievance specialist at New Castle, reviewed his records and the Offender Grievance Review and Evaluation System ("OGRE") and was unable to locate any grievances that were accepted and logged between December 20, 2019, and January 9, 2020, relating to Mr. Rowe's complaint. Dkt. 27-1 at ¶¶ 5-11.

## IV.
## Discussion

The record leaves no dispute that Mr. Rowe did not complete every step in the grievance process. Mr. Rowe argues however, that loss of property is a non-grievable issue and thus the IDOC's administrative remedy process was not available to him. In addition, he argues that while he filed a formal grievance, he was unable to file an appeal because of the actions of the prison officials.

### A.  Non-Grievable Issues

Mr. Rowe argues that the grievance process was unavailable because his claims relate to his personal property being lost or stolen by the defendants in retaliation for pursuing First Amendment activities. Dkt. 32-1 at 8. In support he cites to the Seventh Circuit's opinion in *Miles v. Anton*, 42 F.4th 777 (7th Cir. 2022). Dkt. 32-1 at 8. *Miles* reviewed the IDOC's grievance process and found that "[t]he policy categorizes actions as grievable or non-grievable without regard for their motivating reasons or downstream consequences." *Id.* at 781. The conduct at issue in this case is the loss of Mr. Rowe's property. That is the injury. And, as Mr. Rowe points out, the IDOC's

8

grievance policy includes a section labeled, "Matters Inappropriate to the Offender Grievance Process" and lists "examples of non-grievable issues" including, "Tort Claims seeking monetary compensation." Dkt. 37-1 at p. 4. This is consistent with the IDOC Policy and Administrative Procedures Number 00-01-104 (Tort Claims for Property Loss),[3] that provides that "Staff shall advise all offenders that when an offender attempts to obtain reimbursement for personal property, the offender is not to use the administrative procedures for Policy 00-02-301, 'Offender Grievance Process.'"

In response to Mr. Rowe's argument that IDOC policy did not require him to engage in the grievance process before turning to federal court, Defendants argue that "[t]he Order Screening the Severed Complaint . . . shows that the allowed claims in this matter were grievable." Dkt. 37 at 5. They continue:

> Plaintiff makes much-to-do about his claims relating to personal property being lost/stolen, but there is no competent evidence available for the Court to consider on those matters at this stage of the proceedings. In fact, there is no evidence of this, as Plaintiff himself can only speculate and make accusations, admitting that he was not present when either NCCF or ISP or some other transferring authority "lost or stole" his property, if that is indeed what occurred. Yet, his claims are not allowed to relate to State law torts and State law negligence and proceed in Federal litigation.
>
> Plaintiff unjustly asks this Court to re-interpret its Screening Order to allow his new theory that his 8th Amendment Retaliation claims also relate to State law matters, which are appropriately before this Court.

*Id.* The Court does not understand this response. As Mr. Rowe points out, the Screening Order "has no bearing whatsoever" on whether the claims alleged are grievable under the IDOC's grievance policy.

The Seventh Circuit resolved a similar dispute in favor of the prisoner plaintiff in *Miles*. In that case, Miles sued Anton under 42 U.S.C. § 1983 alleging that Anton violated his First

---

[3] Available at: https://www.in.gov/idoc/files/00-01-104-Tort-Claims-2-1-2013.pdf

9

Amendment rights by refusing to let him attend religious services and then retaliating against him by firing him when he nonetheless did so. Anton moved for summary judgment arguing that Miles failed to file a formal grievance focused on his firing before bringing his lawsuit. The Seventh Circuit held that Miles did not have to file a grievance because a classification action, such as the loss of a job, was not a grievable issue under the grievance policy. *Miles*, 42 F.4th at 780 ("Whatever her motivation, Anton's decision to fire Miles was a "classification action" connected to the "loss of a job." It is therefore not grievable under the plain language of the policy.").

In this case, Defendants allegedly retaliated against Mr. Rowe by losing or stealing his property. The action was the loss of property. A tort claim "provide[s] a mechanism in accordance with Indiana statutes for offenders to file claims for monetary reimbursement for personal property which they believe was wrongly disposed of, damaged, or destroyed by Department of Correction staff." IDOC No. 00-01-104. In *Miles,* the Seventh Circuit reversed the district court's conclusion that there was a distinction between the allegedly retaliatory decision to fire plaintiff and the loss of the job. 42 F.4th at 781 (finding that "it makes practical sense for a grievance regime to be ordered around actions rather than the legal theories used to support or oppose them."). Here, the injury was the loss of property, and that claim is excluded from the grievance process regardless of whether the loss was a result of retaliation or negligence.

The Defendants may argue that the grievance policy provides that Mr. Rowe could pursue or originate a grievance at New Castle (the facility from which he was transferred) "regarding transfer of property or funds" within twenty business days from the date of transfer or release. Dkt. 37-1 at 14. But any ambiguity must be resolved in Mr. Rowe's favor. This is because "an official 'must show beyond dispute that remedies were available' before the court should dismiss on the basis of the affirmative defense." *Miles,* 42 F.4th at 781-82 (quoting *Ramirez v. Young*, 906 F.3d

530, 534 (7th Cir. 2018)). "Ambiguous policy language is not beyond dispute by definition, and so resolving interpretative ambiguity against the official goes hand in hand with our practice of placing the broader burden of proof with the official." *Id.*

### B. Availability of Appeal Process

The IDOC grievance process requires an informal grievance, a formal grievance, and two appeals. The record taken in the light most favorable to Mr. Rowe is that he did informally grieve his concerns and that he properly submitted a formal grievance, but despite his repeated efforts was never notified whether his formal grievance was accepted or rejected. *See Dole v. Chandler*, 438 F.3d 804, 812 (7th Cir. 2006) ("Prison officials may not take unfair advantage of the exhaustion requirement and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance."). It is unclear what, if anything, triggers an inmate's obligation to file an appeal when he has not received a receipt, a rejection, or a response to his grievance or a response to his notification that he has not received a receipt or a rejection. "Although a prisoner must take all the steps the prison offers, and do so properly, this does not mean that the inmate must go beyond the established system and guess at some other way of attracting the attention of the prison authorities." *Williams v. Wexford Health Sources, Inc.*, 957 F.3d 828, 833–34 (7th Cir. 2020) (internal citations omitted). "An administrative scheme . . . can be 'so opaque that it becomes, practically speaking, incapable of use.'" *Reid*, 962 F.3d at 329 (quoting *Ross*, 578 U.S. at 643). "[I]f 'no ordinary prisoner can make sense of what it demands,' the process is 'unknowable' and thus unavailable." *Id.* (quoting *Ross*, 578 U.S. at 643–44).

This issue need not be resolved, however, given the conclusion that the grievance policy excludes tort claims.

11

## V.
## Conclusion

For the reasons explained above, Defendants' motion for summary judgment, dkt. [25], is **denied**. Because the IDOC's grievance policy excepted his case from the administrative process, Mr. Rowe had complied with the PLRA's exhaustion requirement when he brought his suit in federal court. Thus, it appears that Mr. Rowe is entitled to judgment as a matter of law on this issue. Pursuant to Rule 56(f)(1), the Court gives Defendants notice of its intent to grant summary judgment in Mr. Rowe's favor on this issue. Defendants have **through June 12, 2023,** in which to object to the Court's proposal. Alternatively, Defendants may withdraw their affirmative defense by this date.

Mr. Rowe's motion to correct written error in his surreply to reflect that he intended to write "<u>without</u> a grievance log number" and not "with a grievance log number," dkt. [40], is **granted**.

Mr. Rowe's motion to submit a Memo dated January 22, 2020, and located on February 3, 2023, for consideration when ruling on the pending motion for summary judgment motion, dkt. [41], is **granted**.

**IT IS SO ORDERED.**

Date: 5/18/2023

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

JEFFREY ALLEN ROWE
116017
INDIANA STATE PRISON
INDIANA STATE PRISON
Inmate Mail/Parcels
One Park Row
MICHIGAN CITY, IN 46360

Joseph Thomas Lipps
BBFCS ATTORNEYS
jlipps@bbfcslaw.com